IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>           Plaintiff,<br><br>     v.<br><br><br>MARRIOTT OWNERSHIP RESORTS,<br><br>INC., et al.,<br><br>           Defendants. | Case No. 20-cv-07523-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Samuel Love has sued Defendants Marriott Ownership Resorts, Inc. and Marriott Resorts Hospitality Corporation, respective owner and operator of the Marriott Vacation Club Pulse ("Hotel"), for violations of the federal Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act. Defendants have moved to dismiss both claims for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted. Because the Court agrees that Love has failed to state a claim, the Court grants Defendants' motion to dismiss in full.

**I.   BACKGROUND**

   **A.   Plaintiff Samuel Love**

Plaintiff Samuel Love is a California resident with physical disabilities who relies on a wheelchair for mobility. FAC (dkt. 20) ¶ 1. Love's disability has left him "unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects." Id. ¶ 12. As such, when traveling, Love requires access to information on accessibility features in hotel rooms

so that he can book a room with confidence that it will suit his needs.  Id. ¶ 13.  Love works as an Americans with Disabilities Act (ADA) tester, which means that he "frequents businesses to determine if they have complied with the anti-discrimination mandates of the ADA."  Id. ¶ 35.

### B. Love's Interaction with the Hotel

On September 24, 2020, Love visited the Hotel's website to book an accessible room for a February 2021 trip to the San Francisco area.  Id. ¶¶ 14–15.[1]  Defendant Marriott Ownership Resorts, Inc. owns the Hotel, which is located at 2620 Jones St., San Francisco, CA.  Id. ¶ 2.  Defendant Marriott Resorts Hospitality Corporation operates the Hotel.  Id.  The website "is the official online reservation system for this hotel."  Id. ¶ 16.  Love alleges that the Hotel website's accessibility information is deficient in numerous ways that prevented him from booking a room.  Id. ¶¶ 17–23.

#### 1. Accessible Areas and General Features

First, Love alleges that the Hotel website provides no more than conclusory descriptions of the Hotel's accessible spaces and features.  Id. ¶¶ 17, 23.  Love alleges that, for example, on a tab titled "Accessible Areas with Accessible Routes from Public Entrance," the Hotel website provides a list that includes: "Business Center," "Fitness Center," "Public entrance alternative," "Registration Desk Pathway," and "Registration desk," without specifying what makes these features accessible.  Id. ¶¶ 17–18.

Similarly, Love alleges that on the "Accessible Hotel Features" tab, the Hotel website provides the following information about its features: "Self-parking facility, van-accessible spaces;" "Self-parking, accessible spaces;" "Service animals are welcome;" "Valet parking for vehicles outfitted for drivers in wheelchairs;" and "Elevators."  Id. ¶ 18.  Again, Love alleges that the "hotel simply slaps the label 'accessible' on the elevator and parking without providing a single bit of data."  Id. ¶ 19.

---

[1]  Love alleges that the Hotel's reservation website can be found at: https://www.marriott.com/hotels/hotel-rooms/sfovm-marriott-vacation-club-pulse-san-francisco/.  FAC ¶ 15.  Defendants do not contest this.  See MTD FAC (dkt. 22-1) at 12.

### 2. Guest Room Descriptions

Love alleges that the descriptions of guest room accessibility are slightly more detailed but still lack necessary information. Id. ¶ 19–20. Love alleges that on the tab titled "Guest Room Accessibility," the Hotel website provides the following general information:

- Accessible guest rooms with 32" wide doorways
- Accessible route from public entrance to accessible guest rooms
- Alarm clock telephone ringers
- Bathroom grab bars
- Bathtub grab bars
- Bathtub seat
- Electrical outlets, lowered
- Flashing door knockers
- Hearing accessible rooms and/or kits
- No transfer showers available
- Roll-in shower
- Shower wand, adjustable
- Toilet seat at wheelchair height
- Vanities, accessible

Id. ¶ 19. The website provides guests a phone number to call for detailed information about the physical features of various rooms and for special services relating to specific disabilities. RFN 1 (dkt. 22-2) Ex. A.

### 3. The Booking Process

The website also offers information on accessible rooms during the booking process. In order to book an accessible room, guests first select the type of room they would like to reserve (i.e. the size of the room, layout, and number and type of beds). Id. Ex. B. After guests select a room type, they are directed to a page that lists specific details regarding the accessibility features of the room. Id. Ex. C. For example, the website might provide that the specific room is a mobility accessible room, has a tub, and is a hearing accessible room. Id. The website notifies

3

guests that "[a]ccessible rooms are guaranteed only if inventory is available at time of booking—otherwise it is upon request only." Id.

### C.     Inadequacy of Information

Love alleges that this information is insufficient as it prevented him from independently determining whether the accommodations would suit his accessibility needs. FAC ¶ 22. Love alleges that "accessible" is just a conclusory label. Id. ¶ 23. In order to independently assess whether a given accommodation will fit his needs, Love alleges that he needs "actual data, not adjectives." Id. ¶ 25. Love provides a list of the information he would need to independently assess the accessibility of the accommodations, including the height of vanity mirrors in the bathroom; the depth, width, and height of the area under the lavatory sink for knee clearance; and whether exposed pipe under the sink is insulated. Id. ¶ 28. Love alleges that the lack of accessibility information caused him "difficulty and discomfort" that prevented him from booking a room at the Hotel. Id. ¶ 34.

### D.     Future Visits

Love alleges that he plans to return to the Hotel website to make a reservation for a future stay once the Hotel represents to him that the website is accessible. Id. ¶ 37. In particular, Love alleges that he plans to make another trip to the San Francisco area in May or June 2021. Id. ¶ 36. Love alleges that his "reasons and motivations" for this subsequent visit "are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion." Id. ¶ 39. "As a veteran ADA tester," Love alleges that he "routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA." Id. ¶¶ 37, 40.

### E.     Procedural History

On October 27, 2020, Love filed an initial complaint against Defendants, see generally Compl. (dkt. 1), which Defendants moved to dismiss on December 28, 2020, see generally MTD Compl. (dkt. 18-1). On January 18, 2021, Love filed an amended complaint. See generally FAC. Both the complaint and the amended complaint allege that the accessibility information on the Defendants' Hotel reservation website violates the ADA and California Unruh Civil Rights Act.

See generally id. Love seeks injunctive relief under the ADA and statutory damages under the Unruh Act. See generally id. The Court has federal question jurisdiction over Love's ADA claim, see 28 U.S.C. § 1331, and can exercise supplemental jurisdiction over the related state law claim, see 28 U.S.C. § 1367. Defendants have moved to dismiss both claims. See generally MTD FAC (dkt. 22-1).[2]

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When evaluating a Rule 12(b)(6) motion, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). But conclusory allegations amounting only to "formulaic recitation of the elements" are not entitled to an assumption of truth. See Iqbal, 556 U.S. at 681 (quoting Twombly, 550 U.S. at 555). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

When dismissal is appropriate, courts "shall freely" give leave to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, district courts may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

---

[2] Defendants' motion to dismiss exceeded the fifteen-page limit set by Standing Order of this Court. See generally MTD FAC. The Court grants Defendants leave to file a brief in excess of fifteen pages.

5

1  opposing party by virtue of allowance of the amendment, and futility of amendment." Leadsinger,
2  Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (quoting Foman v. Davis, 31 U.S.
3  178, 182 (1962)).

**III.  DISCUSSION**

Defendants argue that the Court should dismiss Love's ADA and Unruh Act claims because Love lacks standing to bring these claims, and because the claims fail on the merits. The Court grants the motion to dismiss the ADA claim as Love has failed to show that the Hotel's website violated the applicable regulations. The Court further grants the motion to dismiss the California Unruh Civil Rights Act claim because it is predicated on a violation of the ADA.[3]

**A.  Americans with Disabilities Act**

This section will first address Defendants' argument that Love lacks standing to bring his ADA claim. Because the Court holds that Love has standing, this section will then address Defendants' argument that Love's ADA claim fails on the merits.

**1.  Standing**

"The doctrine of standing limits federal judicial power." Or. Advocacy Ctr. v. Mink, 322

---

[3] Defendants request that the Court take notice of Defendants' Hotel reservation website. See generally RFN 1. They also request in their reply that the Court take notice of four recent judicial decisions, the public website of the San Francisco Planning Department documenting the Hotel's approved building permits, and a copy of Love's litigation history. See RFN 2 (dkt. 25). Love references the Hotel website in his complaint, see FAC ¶¶ 15–20, and the website's accuracy cannot reasonably be questioned, see Fed. R. Civ. P. 201(b)(2). Although Love does not mention the cases, the San Francisco Planning Department website, or his litigation history in the complaint, their accuracy also cannot reasonably be questioned. See Fed. R. Civ. P. 201(b)(2). The Court can take notice of factual information publicly available on the internet when its accuracy cannot reasonably be questioned. See, e.g., Matthews v. Nat'l Football League Mgmt. Council, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012). Therefore, the Court grants Defendants' request for judicial notice of the Defendants' Hotel website, the judicial opinions, and the San Francisco government website containing building permit records. The Court denies Defendants' request for judicial notice of Love's litigation record because it is irrelevant. Love has requested that the Court also take notice of a separate judicial opinion. See Love RFN (dkt. 26). For the reasons stated above, the Court grants Love's request for judicial notice.
In addition, Defendants have attached a Declaration (Orlick Decl.) including four screenshots of Defendants' Hotel website and opinion testimony that the Hotel website complies with relevant ADA regulatory requirements, for incorporation by reference. See generally Orlick Decl. (dkt. 22-3). The website screenshots in the four exhibits largely repeat information of which the Court has taken notice. See id. Ex. A–D. The opinion testimony of defense attorney Orlick that the website complies with the ADA, see id. at 2, is both impermissible opinion testimony of a layperson and reaches an ultimate legal conclusion, see Fed. R. Evid. 701. The Court incorporates Exhibits A–D of the Declaration but declines to incorporate the opinion testimony.

F.3d 1101, 1108 (9th Cir. 2003). Thus, plaintiffs must have standing to be "entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). To have standing, plaintiffs must establish (1) that they have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and (3) that their injury would likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Defendants argue that Love has failed to adequately plead his intent to return to the Hotel necessary to give rise to an "injury in fact." MTD FAC at 7.

To prove the "injury in fact" necessary for standing, plaintiffs must show "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (citations and internal quotation marks omitted). Where, as here, a party seeks injunctive relief, "past wrongs do not in themselves amount to [the] real and immediate threat of injury" necessary for standing. City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983). Rather, parties must show "continuing, present adverse effects" of the defendants' actions. Id. at 102.

"A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility." Civ. Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr., 867 F.3d 1093, 1098 (9th Cir. 2017). Plaintiffs can establish this by alleging "an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008). Although plaintiffs must allege more than a hypothetical "'some day' intention[]" to return, Lujan, 504 U.S. at 564, they "need not engage in the futile gesture of attempting to gain access in order to show actual injury," Civ. Rights Educ., 867 F.3d at 1098 (internal quotations omitted). "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." Id. (internal quotations omitted).

Love has adequately pleaded the intent to return and consequent injury in fact necessary to satisfy standing. Love has provided concrete, articulable plans to return to the Hotel once he is informed that the website is accessible. See, e.g., FAC ¶ 36 (alleging intent to make a trip to the

7

San Francisco area in May or June 2021). Additionally, Love has alleged that "[a]s a veteran ADA tester," he routinely returns to accommodations he has sued to ensure their compliance with the ADA. Id. ¶¶ 37, 40; see also Civ. Rights Educ., 867 F.3d at 1102 (concluding that "motivation is irrelevant to the question of standing" under the ADA and that ADA testers have standing if they meet traditional criteria). These allegations rise above mere "'some day' intentions." Lujan, 504 U.S. at 564. Taking "all factual allegations of the complaint to be true," Usher, 828 F.2d at 561, Love has adequately pleaded a continuing injury necessary to support standing.

Defendants do not contest that Love has adequately pleaded that the injury, if proven, would be both fairly traceable to their conduct and redressable by this Court, see MTD FAC at 7–8, and the Court holds that Love has standing.

### 2. Merits

#### a. The Language of the Statute and Relevant Regulations

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" unless the modification would fundamentally alter the nature of the good. Id. § 12182(b)(2)(A)(ii).

Regulations implementing the ADA specify the application of these commands to hotel reservation systems. 28 C.F.R. § 36.302 states that

> [a] public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, . . . (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms; (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs[.]

Id. § 36.302(e)(1). Love alleges that the Defendants have (1) failed to describe "accessible

features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs" and (2) "failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." FAC ¶ 44. These allegations rise and fall together. The basis of the "failure to ensure equal reservation access" claim is that the Hotel fails to provide enough accessibility information to allow individuals with disabilities to use the online reservation system. If the Hotel's website reservation system provides the required accessibility information, individuals with disabilities have equal reservation access through it.

To state a claim under the ADA, a "plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). "The third element is satisfied when there is a violation of applicable accessibility standards." Rodriguez v. Barrita, Inc., 10 F. Supp. 3d 1062, 1073 (N.D. Cal. 2014).

Defendants do not contest the first two of these elements; rather, they argue that the implementing regulations and relevant DOJ guidance demonstrate that the Hotel's website reservation system complies with the commands of the ADA and that Love has thus not been denied accommodations on account of his disability. MTD FAC at 11–14. The argument relies on understanding what 28 C.F.R. § 36.302(e) requires in practice.

### b. The Agency's Interpretation and Guidance

"[T]here is little precedent interpreting 28 C.F.R. § 36.302(e)," Kennedy v. Siesta Inn & Suites, Inc., 828 F. App'x 658, 661 (11th Cir. 2020), but the Department of Justice ("DOJ"), which promulgated the regulation, has put forth Title III Regulations 2010 Guidance and Section-by-Section Analysis ("2010 DOJ Guidance" or "Guidance") explaining the requirements in more detail, see 28 C.F.R. Pt. 36, App. A. Courts in the Ninth Circuit have relied on this guidance in determining the meaning of these ADA regulations. See, e.g., Barnes v. Marriott Hotel Servs., Inc., No. 15-CV-01409-HRL, 2017 WL 635474, at *9 (N.D. Cal. Feb. 16, 2017). And the Ninth

1  Circuit grants "substantial deference" to an agency's "interpretation of its own regulations."
2  Miller v. California Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008).  Thus, although the
3  2010 DOJ Guidance is just advisory, it is helpful in understanding the requirements under these
4  regulations.
5        The 2010 DOJ Guidance does not provide a definitive list of the information that must be
6  included to meet accessibility standards under the ADA, but it does establish a general rule that
7  the information required may vary with the accessibility of the described accommodations.  For
8  instance, the Guidance states that "[f]or older hotels with limited accessibility features," the
9  regulations require more detailed accessibility information.  28 C.F.R. Pt. 36, App. A.  But "[f]or
10 hotels that were built in compliance with the 1991 Standards," it may suffice

> to specify that the hotel is accessible and, for each accessible room,
> to describe the general type of room (e.g., deluxe executive suite),
> the size and number of beds (e.g., two queen beds), the type of
> accessible bathing facility (e.g., roll-in shower), and
> communications features available in the room (e.g., alarms and
> visual notification devices).

15 Id.  The regulations balance ensuring that "individuals with disabilities [feel] comfortable making
16 reservations," while also "recogniz[ing] that the information and level of detail needed will vary
17 based on the nature and age of the facility."  Id.

### c.   Application to the Hotel's Website

19       The Hotel provides descriptions of its accessible features on its website.  First, the website
20 provides general descriptions of which of its facilities, features, and guestroom amenities are
21 accessible.  See RFN 1 Ex. A; FAC ¶¶ 17–20.  Second, as part of the booking process, guests first
22 choose a room type that interests them (specifying the type of bed, size, view, etc.).  RFN 1 Ex. B.
23 Once guests have selected a specific type of room, they are able to request accessibility
24 accommodations to that room.  RFN 1 Ex. C.  As the Hotel website outlines, these
25 accommodations include: "[a]ccessible guest rooms with 32" wide doorways," "[a]larm clock
26 telephone ringers," "[b]athroom grab bars," "[h]earing accessible rooms and/or kits," and "[r]oll-in
27 shower," among others.  RFN 1 Ex. A; FAC ¶ 19.  Love argues that this information fails to
28 provide "enough detail to reasonably permit individuals with disabilities to assess independently"

10

whether the accommodations suit their accessibility needs. FAC ¶ 23 (quoting 28 C.F.R. 36.302(e)(1)(ii)).

Although Love would prefer more detailed accessibility information,[4] the 2010 DOJ Guidance shows that the Hotel complies with ADA regulations. The Hotel is a recent construction which was built to comply with the 2010 ADA standards. See MTD FAC at 11; RFN 2 Ex. E (dkt. 25-5). The 2010 ADA standards for new construction went into effect in March 2012 and provided a safe harbor for buildings built before that date that complied with the 1991 standards. See 28 C.F.R. § 35.151(c). This suggests that the 2010 ADA standards are at least as stringent as the 1991 ADA standards. As such, the Hotel need only provide information on its website about general accessible facilities and specific accessible amenities available in each guest room including the type of the room, the size and number of beds, the type of accessible bathing facility, and the communications features. 28 C.F.R. Pt. 36, App. A.[5]

Love's own allegations demonstrate that the Defendants comply with 28 C.F.R.

---

[4] The accessibility information that Love proposes the Hotel be required to provide on its website is somewhat arbitrary. He labels some information, such as the height of bathroom vanities and knee space under the sink as "bare necessities," but describes information pertaining to other "technical requirements under the ADA" like "the tensile strength and rotational design of grab bars" as "beyond what is a reasonable level of detail." FAC ¶¶ 27–32. Love does not describe a methodology for determining which piece of information falls into each bucket for him, let alone account for the idiosyncratic desires of other individuals with disabilities. Id. The 2010 DOJ Guidance states, and both parties agree, that "a reservations system is not intended to be an accessibility survey." See 28 C.F.R. Pt. 36, App. A.; FAC ¶ 25; MTD at 9. But Love's proposal, contrary to the guidance of the Department of Justice, would be just that.

[5] Recent cases in the Ninth Circuit addressing ADA claims against hotels that provided accessibility information substantially similar to the information here support this outcome. In Love v. Marriott Hotel Servs., Inc., No. 20-CV-07137-TSH, 2021 WL 810252, at *8 (N.D. Cal. Mar. 3, 2021) and Arroyo v. JWMFE Anaheim, LLC, No. SACV2100014CJCKESX, 2021 WL 936018, at *1, *3 (C.D. Cal. Feb. 16, 2021), courts held that the accessibility information on the reservations sites of two Marriott-owned hotels satisfied 28 C.F.R. 36.302(e)(1)(ii) because that information exceeded the 2010 DOJ guidance. The accessibility language mirrored the language at issue in this case. See Love, 2021 WL 810252, at *6 ("Accessible guest rooms with 32" wide doorways," "Accessible route from public entrance to accessible guest rooms," "Alarm clock telephone ringers," "Bathroom grab bars," "Bathtub grab bars Bathtub seat," . . . ); Arroyo, 2021 WL 936018, at *3 ("accessible guest rooms with 32-inch wide doorways, accessible route from public entrance to accessible guest rooms, alarm clock telephone ringers, bathroom grab bars, bathtub grab bars, bathtub seat"). Love's reliance on Garcia v. Patel and Joshi Hospitality, 5:20-cv-02666-JGB (C.D. Cal. March 19, 2021), to argue otherwise is unavailing. First, Garcia involved a website with different accessibility information. See, e.g., Garcia, 5:20-cv-02666-JGB, slip op. at 2 (no mention of accessible toilet). Second, Garcia's analysis of the 2010 DOJ Guidance departs from the consensus of most district courts. See, e.g., Love, 2021 WL 810252, at *6; Arroyo, 2021 WL 936018, at *3; Barnes, 2017 WL 635474, at *9.

11

36.302(e)(1) under the 2010 DOJ Guidance. Accordingly, the Court grants the motion to dismiss the ADA claim with prejudice.[6]

### B. California Unruh Civil Rights Act

California's Unruh Civil Rights Act, in relevant part, provides that "[a]ll persons within [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). In general, the Unruh Act only "prohibit[s] intentional discrimination in access to public accommodations." Harris v. Capital Growth Inv'rs XIV, 805 P.2d 873, 874 (Cal. 1991). But a violation of the ADA is a per se violation of the Unruh Act, see Cal. Civ. Code § 51(f), regardless of whether the discrimination was intentional, see Munson v. Del Taco, Inc., 208 P.3d 623, 625 (Cal. 2009).

Love has failed to adequately allege a violation of the Unruh Civil Rights Act. Love does not allege that the Hotel intentionally discriminated against him; he only alleges that Defendants violated the Unruh Act by "failing to comply with the ADA with respect to its reservation policies and practices." FAC ¶ 47. As Love has failed to adequately allege a violation of the ADA, the Court grants the motion to dismiss the Unruh Act claim with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion and DISMISSES WITH PREJUDICE the ADA and Unruh Act claims.

**IT IS SO ORDERED.**

Dated: March 29, 2021

CHARLES R. BREYER
United States District Judge

---

[6] The Court does not address Defendants' alternative Due Process argument. See MTD FAC at 15–16.

12